**EAST OHIO GAS CO v COE et**

Ohio Appeals, 9th Dist, Summit Co

No 2027. Decided March 16, 1932

Tolles, Hogsett & Ginn, Cleveland, and Frank & Ream, Akron, for plaintiff in error.

Musser, Kimber & Huffman, Akron, for defendants in error.

**WASHBURN, J.**

It is true that the transaction had no direct connection with or relation to the work being performed by Coe, but it did occur while Coe was actually engaged in performing the duties of his employment. It is therefore important to determine whether the injury which Coe suffered had its cause outside of and disconnected with his employment or whether his employment had some causal connection, directly or indirectly, with the injury.

This is a so-called "horseplay" case—that is, one in which a workman was injured by the sportive act of a fellow-workman, and in a great many jurisdictions the courts do not recognize the principle that risk from pranks of fellow-workmen are incident to the business and grow out of the employment, and in such jurisdictions it is quite generally held that no compensation is recoverable under the Workmen's Compensation Acts for injuries sustained through horseplay or fooling which was done independently of and disconnected from the performance of any duty of the employment. In a much smaller number of jurisdictions the courts recognize that horseplay or fooling among the employees while at work is incident to the business and can be fairly said to grow out of it, and in those jurisdictions the right to compensation is sustained where an employee who is injured through horseplay or fooling by other employees took no part in the fooling but was attending to his duties.

Ohio belongs to the latter class of jurisdictions. The Supreme Court of Ohio has definitely determined that

"2. The test of right to award from the insurance fund under the Workmen's Compensation Law, for injury in the course of employment, is not whether there was any fault or neglect on the part of the em-

ployer, or his employes, but whether the employment had some causal connection with the injury, either through its activities, its conditions or its environments.

"3. The provisions of the law do not cover an injury which had its cause outside of and disconnected with the business in which an injured workman was employed. (Fassig v The State, ex rel., 95 Oh St 232, approved and followed.)"

**Industrial Comm v Weigandt, 102 Oh St 1.**

There is great confusion in the statements, observations and reasonings of the courts of the various states on the subject of when an accident arises out of the employment, but we think that it may be safely said that an accident arises out of the employment where it results from a risk incidental to the employment, as distinguished from a risk common to all mankind, although the risk incidental to the employment may include a risk common to all mankind, for if by his employment an employee is exposed beyond the normal risk common to mankind or if the exceptional amount of exposure aggravates the common risk, the accident does not arise out of the common risk, but out of the employment.

We think that in **Industrial Comm v Weigandt, supra,** the Supreme Court of Ohio clearly recognized that the association of men in a common work is an environment of the employment which is to be taken into consideration in determining the risks incident to the employment; that every employe is peculiarly exposed to such pranks from his co-employees as are inspired by nothing more than a well-nigh universal human craving for fun; that such pranks when careless though innocent, not infrequently occasion bodily harm and are properly considered as a hazard which an employee required to work with others must encounter in the performance of his duties; and that therefore such pranks constitute a risk reasonably inherent in or incident to the conduct of the employer's business.

"1. While an employe in compliance with his duty was in the factory where he was employed going to his machine, he was struck in the eye and injured by a file which flew from its handle during a friendly scuffle for it by two other employes. **Held:** The injury was one occasioned in the course of the workman's employment within the Workmen's Compensation law."

**Industrial Comm v Weigandt, supra.**

It will be noted that in the above-mentioned case the injured employee was himself strictly in the line of his duty as an employee and did not instigate or take part in the scuffle.

What should be the rule as to an employee who, in the course of his employment, is injured while he is engaged in a friendly scuffle with another employee?

So far as we know, there is no case in Ohio which answers that question.

Plaintiff in error insists that participation in the scuffle defeats the injured employee's right to compensation.

There are not many cases where that particular question was involved. Most of the cases are based upon the holding that the environment of men associated in common work is not an element to be considered in connection with "practical joking," "skylarking" or "horseplay" of employees, and compensation has been denied regardless of whether the injured employees participated therein; but as has been pointed out, the Supreme Court of Ohio, in **Industrial Comm v Weigandt, supra,** has definitely adopted the view of those cases which recognize such conduct on the part of employees as a natural consequence of the association of men in common work, and therefore to be ' reasonably anticipated. While in some cases in other states, language is used by the courts which seems to indicate that participation in such conduct by the injured employee is an important element to be considered in determining whether or not compensation should be awarded, the question being open in Ohio, we feel at liberty to follow that line of reasoning which we think is logical and just and is best calculated to carry out the spirit of the Workmen's Compensation Law.

As the claim or award under the Workmen's Compensation Law is not based on the neglect or fault of the employer or of any of his employees, and is not defeated by the negligence of the injured employee, we do not think that the mere fact that the injured employee participated in the friendly scuffle should be given a controlling effect in answering said question.

If we recognize that a friendly scuffle of employees may be an occurence incidental to the conduct of the business and that the law grants compensation for an injury which is the result of an occurence incidental to the conduct of the business, we cannot deny compensation to an injured employee solely on the ground that he engaged in the scuffle without penalizing him for doing a thing which we recognize is likely to occur as an incident of the employment; and to do so would be virtually defeating his right to compensation because of his negligence, which is contrary to the spirit of the Workmen's Compensation Law.

To our minds it is equally illogical and unsound to make the right to compensation of an employee who engages in a scuffle depend upon whether scuffling or playful conduct among employees is commonly carried on with the knowledge or consent of the employer, for, as has been said, the test of right to award for injury in the course of employment is not whether there was any fault or neglect on the part of the employer.

It seems to us that the answer is rather to be found in a consideration of the character and location and circumstances of the scuffle. If the scuffling occurs when the participants are not working and at a place other than where work is to be done, it may well be said that the injured workman has stepped aside from the employment and therefore his injury had its cause outside of and disconnected with the business in which he was employed; but if the acts of the injured employee were not entirely independent of or disassociated from the performance of his duty and are such as might reasonably be expected, the scuffling is an incident of the employment regardless of his participation therein.

It is generally conceded by all the courts that the various compensation acts were intended to eliminate the fault of the workman as a basis for denying recovery and should receive a liberal construction favorable to the workman, and it therefore seems to us that, where a workman at work for his master sustains injury because of his environment, he should be entitled to compensation, and his right to compensation should not be nullified by the fact that his yielding to a natural playful impulse, reasonably to be expected, contributed to his injury.

In the case at bar, Coe was at the place of his work and was actually performing the duties of his employment, which at that moment was to stand and wait until a fellow-employee loosened earth in the ditch being dug, and when he was approached by another employee, he did not, by taking the rule, do anything unusual or which was not reasonably to be expected; in what followed he was in no sense the aggressor, and the rough and uneven surface of the ground where it was his duty to be was a factor which probably contributed to his fall.

Our judgment is that it cannot be said, as a matter of law, that Coe stepped aside from his employment, and that what he did was entirely independent of and disassociated from his employment, and that he was engaged in something entirely outside of and foreign to his employment, and therefore the trial court did not err in overruling the motion of the employer for a directed verdict in its favor, nor in overruling the motion for a new trial upon the ground that the verdict was manifestly against the weight of the evidence.

The cases involving an intentional assault by one employee upon a fellow-employee are not decisive of the question involved in the instant case, because an intentional assault is not a natural incident of men associating together, and reasonably to be expected, while friendly joking or scuffling is.

As has been said, there are very few cases in which the injured workman has been denied compensation solely because of his participation in horseplay with fellow-employees, and our judgment leads us to follow the cases holding otherwise.

In a very recent case, decided by the Supreme Court of Pennsylvania, the facts were that several carpenters were engaged in laying a floor in a certain building for their employer; that one of said carpenters measured a board to put in the floor and walked across the room with his board and his handsaw to a keg on which he intended to saw the same; and that—"Close by the Keg, one of the other carpenters was down on one knee, placing boards in the floor. McCoy (the deceased), when he came up to the man, laid one end of this board, which he was carrying, against this man's knee and said: 'Is there anything I can do for you?' The man replied, 'Take that board off my knee.' The deceased dropped the board. The other man jumped to his feet. They immediately engaged in a friendly wrestling match. Deceased threw this other man to the floor, and shortly thereafter, while they were still scuffling, deceased rolled over on his back unconscious. In a short time he was dead. The cause of death was a rupture of a blood vessel at the base of his brain, i. e., apoplexy." The court held that such friendly wrestling match did not break the course of employment and sustained an award of compensation for such injury.

McCoy v Spriggs, 157 Atl. 523.

See also—

Brown v. Vacuum Oil Co., 132 So. 117.

Stark v. State Indus. Acc. Assn., 204 Pac. 151.

Kansas City Fiber Box Co. v. Connell, 43 A. L. R. 478.

At the request of the claimant, the court charged the jury before argument as follows:

"I charge you, as a matter of law, that if you find by a preponderance of all the admitted evidence in this cause that Lonnie

Coe was injured in the course of the employment of the East Ohio Gas Company, and that such injury resulted in his death, then, the claimants are entitled to recover in this case, and your verdict should then be for the plaintiffs."

Insomuch as the constitution empowers the legislature to provide compensation "for injuries * * * occasioned in the course of such workmen's employment," the Supreme Court has determined that an employee is not entitled to compensation unless the employment has some causal connection with his injuries, or, in other words, unless the injuries arose out of the employment; and it is therefore claimed that it was error to use in said request the language "in the course of the employment," without qualifying it by explaining that the injury must also "arise out of the employment." However, such qualification or explanation was made in another request to charge which the court also gave before argument at the request of the claimant, which was as follows:

"The test of right to award from the insurance fund under the Workmen's Compensation Law, for injury in the course of employment, is not whether there was any fault or neglect upon the part of the employer, or his employees, but whether the employment had some causal connection with the injury, either through its activities, its conditions or its environments."

And the court also charged before argument, at the request of the employer, as follows:

"I instruct you that in order for the plaintiff to recover a verdict, she must prove by a preponderance of the evidence that decedent's death was caused by an injury received in the course of his employment, and arising out of his employment. It is not sufficient that the injury occurred at a time when the decedent was engaged in work for his employer, but the injury must have been caused by, and be the result of, the employment."

In the general charge the court also told the jury that—

"The test of the right to an award under the Workmen's Compensation Law is not whether there was any fault or neglect on the part of the employer or his employees, but whether the employment had some causal connection with the injury, either through its activities, its conditions or its environments.

"The law does not allow an award for an injury and resulting death which had its cause outside of and disconnected with the business in which an injured workman was employed.

"So in this case, Was there a line of causation between the Gas Company and the enterprise of Coe which resulted in his death? Was there a causal relation between Coe's employment and the episode which resulted in his death, or did Coe engage himself in something outside of and foreign to his employment?"

It is true that in the general charge the court also stated that—

"The sole question in this lawsuit, ladies and gentlemen of the jury, is whether Lonnie F. Coe was injured in the course of his employment with the East Ohio Gas Company."

In so charging the court used the language of the statute (§1465-68 GC) creating liability.

We are clearly of the opinion that the court committed no error in charging the jury in this case; that the court fully and adequately charged that in order to be compensable, the injury must have arisen out of the employment; and that there was no chance of the jury misunderstanding the court or being misled on that question by anything said by the court before argument or in the general charge, and that therefore there was no prejudicial error in the charge of the court.

A study of the decisions demonstrates that it is almost impossible to frame a comprehensive abstract definition of the expression "arising out of the employment," which would include all compensable cases and exclude those not within the spirit of the law, and it is fundamental that each case must be decided upon the particular facts of that case, and if conflicting inferences may be reasonably drawn, a jury question is presented.

As we have hereinbefore indicated, we think the facts in this case were such as to make it a jury issue as to whether the injury was received in the course of and arose out of the employment, and having reached the conclusion that the finding of the jury on that question is not manifestly against the weight of the evidence, and finding no error in the record, the judgment will be affirmed.

PARDEE, PJ, and FUNK, J, concur.